Case No. 8:20-cv-02360-JLS-KES                                   Date: May 06, 2021
Title: Christian Magallon v. Transtar Industries, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                        Not Present

**PROCEEDINGS:  (IN CHAMBERS) ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT (Doc. 17)**

Before the Court is a Motion to Remand brought by Plaintiff.  (Mot., Doc. 17.)  Defendants opposed, and Plaintiff replied.  (Opp., Doc. 20; Reply, Doc. 22.)  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.  Accordingly, the hearing set for May 7, 2021 at 10:30 a.m. is VACATED.  Having considered the parties' arguments, and for the reasons below, the Court GRANTS Plaintiff's Motion and REMANDS this matter to state court.

I.     **BACKGROUND**

This is an employment action brought against Defendants Transtar Industries, LLC, and TS Logistics Solutions LLC ("Defendants").  (Compl., Ex. 1 to Notice of Removal, Doc. 1-2, ¶ 8.)[1]  Plaintiff Christian Magallon ("Magallon") seeks to represent a class defined as:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of [the Complaint] to final judgment and who reside in California.  (*Id.* ¶ 14.)

---

[1] Defendant Transtar Industries, LLC was erroneously sued as "Transtar Industries, Inc." in the Complaint.  (Notice of Removal, Doc. 1 at 1.)

Magallon was employed by Defendants as an hourly-paid, non-exempt employee from approximately August 2019 to January 2020 in Orange County, California. (Compl. ¶ 19.) Magallon alleges that Defendants "engaged in a pattern and practice of wage abuse" against him and other employees by "failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." (*Id.* ¶ 26.) Magallon brings ten claims against Defendants: (1) Unpaid overtime in violation of Cal. Labor Code §§ 510 and 1198; (2) Unpaid meal period premiums in violation of Cal. Labor Code §§ 226.7 and 512(a); (3) Unpaid rest period premiums in violation of Cal. Labor Code § 226.7; (4) Unpaid minimum wages in violation of Cal. Labor Code §§ 1194, 1197, and 1197.1; (5) Untimely payment of final wages in violation of Cal. Labor Code §§ 201 and 202; (6) Untimely payment of wages during employment in violation of Cal. Labor Code § 204; (7) Non-compliant wage statements in violation of Cal. Labor Code § 226(a); (8) Failure to keep requisite payroll records in violation of Cal. Labor Code § 1174(d); (9) Unreimbursed business expenses in violation of Cal. Labor Code §§ 2800 and 2802; and (10) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. (*Id.* ¶¶ 48–118.)

The case was initially filed in the Superior Court for the State of California, County of Orange on October 28, 2020. (Notice of Removal, "NOR," Doc. 1 at 2.) On December 16, 2020, Defendants timely removed the case to this Court under the Class Action Fairness Act ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d). (*Id.* at 16.) On February 24, 2021, Magallon moved to remand this case to Orange County Superior Court. (Mot.)

## II.    LEGAL STANDARD

"[CAFA] vests federal courts with original diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, (2) the proposed class consists of at least 100 class members, (3) the primary defendants are not States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief, and (4) any class member is a citizen of a state different from any defendant." *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *1

(C.D. Cal. Feb. 5, 2018) (Staton, J.) (citing *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007)); 28 U.S.C. § 1332(d).[2]

     "In determining the amount in controversy [under CAFA], courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)). Where damages are not explicitly pleaded or evident from the face of the complaint, and federal jurisdiction is questioned on that basis, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.* (citing *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 981 (9th Cir. 2013)). As this Court described in *Mortley*, "[a] defendant's preponderance burden 'is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.'" 2018 WL 708115, at *2 (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)); *and see Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation."). This is in line with the Ninth Circuit's characterization of "amount in controversy" as "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Ninth Circuit has also held that "CAFA's [amount-in-controversy] requirements are to be tested by consideration of [1] *real evidence* and [2] *the reality of what is at stake in the litigation*, using [3] *reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added). Hence, beyond actual evidence, district courts may consider context and apply reasonable conjecture when evaluating a removal premised on CAFA jurisdiction.

___
[2] Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

___

### III. DISCUSSION

Magallon primarily argues that this action must be remanded because Defendants have failed to establish the amount in controversy by a preponderance of evidence. (Mot. at 6–15.)[3] Specifically, Magallon argues that Defendants have based their amount-in-controversy calculations on unreasonable assumptions and have failed to submit enough evidence in support. (Mot. at 6–15.) Defendants argue that their evidence and assumptions are reasonable in light of the Complaint's generalized allegations. (Opp. at 7–8.) Defendants have submitted no additional evidence in opposition, and point, instead, to evidence they submitted at the time of removal. (*Id.* at 8 (citing Den Blyker Decl., Doc. 1-1).) Specifically, Defendants rely on a declaration by defense counsel, testifying to the size of the putative class, the total number of weeks they worked, and their average hourly pay. (Den Blyker Decl. ¶ 4.) Defense counsel based these calculations on rosters provided by Defendants, which contained the last hourly rate of pay and the start date and end date (if applicable) for all non-exempt and hourly-paid employees during the time period between October 28, 2016 to November 23, 2020. (*Id.* ¶ 3.)

For the reasons below, Defendants have failed to prove, by a preponderance of evidence, the dollar amount they attribute to Magallon's (1) meal and rest premiums claims, and (2) unpaid overtime claim. The Court need not address the amounts Defendants attribute to Magallon's other claims because, even assuming Defendants have adequately supported those calculations, the total amount placed in controversy falls short of the jurisdictional threshold, and the Court therefore lacks CAFA jurisdiction over this action.

#### A. Meal and Rest Premiums

Magallon alleges that Defendants failed to provide "all required rest and meal periods during the relevant time period." (Compl. ¶ 28.) Defendants proffer evidence that, during the putative class period, they employed approximately 227 non-exempt

---

[3] Magallon also argues that the case must be remanded to state court because more than two-thirds of the prospective class members are citizens of the state where the action was filed. (Mot. at 6.) Because the Court finds that Defendants' have failed to establish that the jurisdictional amount is met, it need not reach this argument.

employees who worked approximately 23,227 workweeks at an average hourly pay rate of $14.79. (NOR ¶ 29; Den Bleyker Decl. ¶¶ 3–5.) Assuming a 100% violation rate per workweek for meal periods (one violation per workday) and a 50% violation rate per workweek for rest periods (one violation per workday), Defendants calculate that the meal period premiums and rest period premiums *each* place $1,717,636 in controversy.[4] (NOR ¶ 30.)

    Magallon argues Defendants' assumed violation rate is unreasonable and not sufficiently supported by evidence. (Mot. at 7.) Defendants counter that their estimated violation rates were necessitated by Magallon's "wholly factually deficient Complaint." (Opp. at 9–10.) Courts disagree about the violation rate that can be assumed where, as here, the Complaint does not allege any specific violation rate. *Compare Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350 AB (PLAX), 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) (acknowledging the split and holding that "[e]ven following *Ibarra*," it was reasonable to assume a 100% violation rate where "Plaintiff alleges that 'at all material times,' Defendant failed to provide putative class members with uninterrupted meal and rest periods as required by California law") *with Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931, at *3 (rejecting defendant's one-violation-a-week assumption because (1) plaintiff's allegation that defendant failed to provide "all legally required" breaks did not amount to an allegation that defendant failed to provide each and every break, and (2) defendant proffered no evidence in support of the violation rate).

    This Court previously held that a defendant's assumption of two violations per week was reasonable where plaintiff's complaint alleges a "company-wide policy" of understaffing and defendants provided evidence that more than 83,000 of 88,202 shifts were greater than six hours long. *Mortley*, 2018 WL 708115, at *4. In a more recent decision, this Court found that, where plaintiff's complaint provided no limiting principle, and plaintiff proffered no rebuttal evidence, it was reasonable for the defendant to assume a 25% meal and rest break violation rate without proffering more evidence. *See Mariscal v. Arizona Tile*, No. 8:20-cv-02071-JLS-KES, Doc. 27, at 5 (C.D. Cal. Apr. 14, 2021) (Staton, J.).

___

    [4] $14.79 (average hourly pay rate for the class) x 116,135 (workdays during the class period) = $1,717,636

Here, although Magallon's Complaint pleads no facts about the frequency of meal and rest break violations, Defendants' unsupported assumption that a violation occurred every single workday is unreasonable. Unlike in *Mortley*, where defendant provided evidentiary support for their assumed twice-a-week violation rate, here, Defendants provide no evidence in support of their five-times-a-week assumption. And, unlike the conservative 25% rate the Court approved in *Mariscal*, Defendants' assumed violation rate here (100% for meal breaks and 50% for rest breaks) is excessive given their failure to provide any evidentiary support. Accordingly, the Court finds that Defendants have failed to establish the estimated amount in controversy they attribute to Magallon's claims for meal and rest period violations claims by a preponderance of the evidence.[5]

### B. Overtime Compensation

Magallon alleges that, during the putative class period, he and other class members were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation for all overtime hours worked. (Compl. ¶ 38.) As discussed above, Defendants have proffered evidence about the number of non-exempt employees, the approximate number of weeks worked by those employees, and their average hourly pay. (NOR ¶ 29; Den Bleyker Decl. ¶¶ 3–5.) Assuming two hours of uncompensated overtime per putative class member per week, Defendants calculate the total amount-in-controversy for this claim to be $687,054. (NOR ¶ 32; Opp. at 11.)[6] Defendants claim that this estimated total is modest because it uses the putative class's

---

[5] Calculating the sums attributable to these claims by using a conservative assumed violation rate would result in the total amount in controversy falling short of the jurisdictional amount. For example, using the 25% violation rate, which the Court approved under similar facts, brings Defendants' estimate from $1,717,636 to $429,409 for meal period violations and from $1,717,636 to $424,409 for rest period violation, totaling $848,818. Assuming a once-a-week violation would bring the estimate to $343,527.33 for meal violations and $343,527.33 for rest violations, resulting in a total of $687,054. Adding either of these totals to the damages attributed to the other claims would not place total amount in controversy above the jurisdictional threshold.

[6] 23,227 (total workweeks) x 2 (hours of unpaid overtime per week) x $14.79 (average hourly pay) = $687,054.

regular average hourly wages ($14.79) rather than the greater 1.5 rate provided by California law. (NOR ¶ 32.)

Many district courts, including this Court, have held that "an assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation." *Mortley*, 2018 WL 708115, at *4 (citing *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)). Here, however, Defendants have offered no legal authority to justify their unsupported assumption of *two* hours of overtime per week. Indeed, Defendants' own case law supports the proposition that, where the complaint alleges only a pattern or practice of overtime violations, assuming one hour of overtime per week is reasonable, and that a higher assumption may be justified only where a defendant proffers an evidentiary basis for it. (Opp. at 11 (citing *Jasso v. Money Mart Express, Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465, at *4–5 (N.D. Cal. March 1, 2012) (permitting an assumption of one hour of overtime pay per week); *Oda v. Gucci Am., Inc.*, No. 2:14–cv–7468–SVW (JPRx), 2015 WL 93335, at *14 (C.D. Cal. Jan. 7, 2015) (same); *Schuyler v. Morton's of Chicago, Inc.*, No. CV 10–06762 ODW (JCGx), 2011 WL 280993, at *3–4 (C.D. Cal. Jan. 25, 2011) (permitting defendants' assumption of 10 hours of overtime per week based on a declaration from a human resources manager).)

Here, Defendants have failed to proffer any evidence to support their assumption of two overtime hours per workweek. The Court agrees with the conclusion in *Jasso* that "[i]t would not be reasonable to double, triple or quadruple [a violation rate of one hour per week] without any evidence to support the calculation." 2012 WL 699465, at *6 (collecting cases). Accordingly, based on Magallon's allegation that Defendants engaged in a "pattern and practice" of wage abuse, and without further evidence from Defendants, it is reasonable to assume a violation rate of one hour of overtime per week at the statutory penalty rate.[7] The amount placed in controversy by this claim is $515,290.

### C. Conclusion

Defendants' calculation of the total amount in controversy also includes the dollar amounts they attribute to Magallon's claims for unreimbursed business expenses; waiting

___
[7] $14.79 (average base hourly rate for putative class members during the class period) x 1.5 (statutory penalty rate) x 23,227 (total workweeks during the class period) = $515,290

time penalties; wage statement violations; and attorneys' fees. (NOR ¶¶ 33–44.) But, given Defendants' failure to support their calculations for the two claims set forth above, the Court need not examine the remaining categories here. Even assuming Defendants have established those amounts by a preponderance of evidence, the total amount in controversy in this action does not meet the jurisdictional threshold.[8] The action must therefore be remanded to state court.

### IV.    CONCLUSION

For the foregoing reasons, Defendants have failed to establish that the amount in controversy meets the jurisdictional threshold. Accordingly, the Court GRANTS Magallon's Motion and REMANDS this action to the Superior Court of California, County of Orange, Case Number 30-2020-01167609-CU-OE-CXC

Initials of Deputy Clerk: mku

---

[8] $848,818 (adjusted total for overtime and rest period premiums assuming a 25% violation rate)+ $515,290 (adjusted unpaid overtime)+ $232,270 (Defendants' calculation of the unreimbursed business expenses) + $578,584 (Defendants' calculation of the waiting time penalties)+ $ 295,350 (Defendants' calculation of the wage statement penalties) + $ 617,578 (attorneys' fees amounting to 25% of the foregoing damages) = $ 3,087,890